1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| ISIDRO VASQUEZ,<br><br>Petitioner,<br><br>vs.<br><br>MATTHEW CATE, Secretary,<br><br>Respondent. | CASE NO. 11-CV-02078-H (WMc)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING CERTIFICATE OF APPEALABILITY** |
|---|---|

17      On September 8, 2011, Isidro Vasquez ("Petitioner"), a California state prisoner

18  proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §

19  2254 challenging the constitutionality of his conviction.  (Doc. No. 1 at 6-16.)  On

20  January 30, 2012, Matthew Cate ("Respondent") filed a response in opposition.  (Doc.

21  No. 11.)  On May 7, 2012, Petitioner filed a traverse.  (Doc. No. 19.)  On July 27, 2012

22  the magistrate judge issued a Report and Recommendation to deny the petition.  (Doc.

23  No. 20.)  Petitioner filed objections to the Report and Recommendation on November

24  5, 2012.  (Doc. No. 23.)  For the following reasons, the Court denies the petition for

25  writ of habeas corpus.

26                              **BACKGROUND**

27      Petitioner seeks relief from his February 2007 conviction of first degree murder

28  with a firearm and criminal street gang enhancements.  (Doc. No. 1.)  The following

facts are taken from the California Court of Appeal's February 5, 2009 decision affirming Petitioner's conviction and sentence. (Lodgment No. 6.)  The facts are presumed to be correct pursuant to 28 U.S.C. § 2254(e)(1).

## A. Eyewitnesses

### *Rosemary Santillano*

At all pertinent times, Rosemary Santillano lived in a house in the 3100 block of Clay Street in San Diego. Clay Street Park is across the street from Santillano's home.  On October 9, 2004, Santillano was preparing for a party at her home and was cleaning up her yard and setting up tables throughout the day. In the afternoon and evening she noticed that a group of African-American males were gathering at a house adjacent to the park. Santillano saw a group of African-American males arrive at the house across the street in a red Jeep Cherokee, leave in the Jeep Cherokee and then return a short time later. Santillano also observed [Petitioner] with the group of African-American males. According to Santillano, [Petitioner] was the only Hispanic she ever saw in the company of the African-American group that regularly congregated at the house and park across the street from her house.

Because the African-American males were drinking and playing loud music and because she was afraid of them, Santillano decided to move her party inside her house. At approximately 8:30 p.m., Santillano was on her porch and noticed an SUV and a white car driving up Clay Street; according to Santillano the group across the street became quite agitated and several members of the group shot at the white car.  After the white car left Clay Street, several members of the group across the street, including [Petitioner] got in the red Jeep Cherokee and drove away.  Santillano also saw two members of the group leave the area in a beige or grayish Cadillac.

According to Santillano, the Cadillac returned to Clay Street later in the evening and at midnight Santillano saw that [Petitioner] had also returned.  A boy who lived in the house across the street, Isaac G., came over to Santillano's house and asked if he could spend the night with Santillano; Isaac's brother [is] a member of the WCC and Isaac said he did not want to stay at home that night because he heard [Petitioner] and another WCC member, "Killa Kev," saying they blasted a "Blood" in the head.

### *Griselda P.*

On October 9, 2004, 10-year-old Griselda P. lived with her mother on Boston Avenue in another neighborhood in southeast San Diego.  At approximately 10:30 p.m., she was on the second-story balcony of her apartment hanging laundry to dry. The balcony overlooked an alley behind the apartment.  Griselda saw a red Jeep Cherokee drive into the alley, turn out its lights and stop at the end of the alley.  Griselda noticed the driver of the Jeep had a bandana which covered his face from the nose down. Notwithstanding the bandana, Griselda was able to identify the driver as a Mexican.   She also saw that there was an African-American in the passenger seat. Shortly after the Jeep stopped, Griselda heard gunshots and

went back into her apartment.  From her apartment window, Griselda saw two men come from a dirt lot next to the apartment building and get in the Jeep, which drove quickly away with its lights out.

Shortly before Griselda heard the shots, Robinson [, the victim,] was sitting in a car parked at 4056 Boston Avenue.  Two males approached the car and shot Robinson with a shotgun and a 9 millimeter handgun.  Robinson's wounds were fatal.  Robinson was an identified member of the 5/9 Brim, which claimed Boston Avenue area as its own.

*Howard Yoakum*

About four blocks from where Robinson was shot, near the intersection of 39th Street and Logan, Howard Yoakum was smoking a cigarette in his back yard.  Yoakum heard gun shots which he believed were coming from the area of Boston Avenue.  A short time after he heard the shots, Yoakum saw a red Jeep Cherokee run through the stop sign at the intersection of 39th and Logan and stop near a Cadillac.  Yoakum saw two African-American males get out of the Jeep, throw guns they were carrying into the trunk of the Cadillac and drive away.  The Jeep drove away as well.

**B.  Gang Affiliation**

The prosecution presented evidence from a number of police officers who testified to the effect that the 3100 block of Clay Street was a known hang out for members of the WCC.  The police officers testified that they saw [Petitioner] on the 3100 block of Clay Street on a number of occasions over a number of years and always in the company of other members of the WCC.  The officers also testified that although there were approximately 400 known members of the WCC, there were only two Hispanic members of the WCC.  The prosecution also presented evidence [Petitioner] was repeatedly seen wearing gang attire and gang tattoos.

One of the officers testified WCC is a criminal gang and that WCC has committed a number of crimes over a long period of time.  The officer testified the 5/29 Brim is a rival gang and that it "claims" the area around Boston Avenue.

Finally, a law enforcement officer in the facility where [Petitioner] was housed while awaiting trial testified that WCC graffiti was found inscribed on [Petitioner's] bunk along with letters to and from WCC members.

(Lodgment No. 6 at 3-6.)

The California Court of Appeals affirmed Petitioner's conviction on February 5, 2009.  (Id. at 1.)  Petitioner directly appealed his conviction to the California Supreme Court.  (Lodgment No. 7.)  The Supreme Court denied his petition for review on April 15, 2009.  (Lodgment No. 8.)

Petitioner then unsuccessfully pursued collateral relief in the state superior,

appellate and supreme courts.   (Lodgment Nos. 9-15.)   On September 8, 2011, Petitioner filed his Federal Petition for Writ of Habeas Corpus.  (Doc. No. 1.)

In his federal Petition, Petitioner alleges claims for a violation of his due process rights based on insufficient evidence to support the jury's findings that Petitioner was the driver of the getaway car, the identification of the Petitioner, and to support the conviction as a whole; a violation of his due process rights based on the admission of witness Griselda Padilla's identification testimony; a violation of his due process rights based on the admission of gang evidence admitted at the trial court; and a violation of his Equal Protection rights.[1]  (Doc. No. 1 at 10-11, 13-14, 16.)

## **DISCUSSION**

### I.      **Standard of Review**

A petitioner in state custody pursuant to the judgment of a state court may challenge his detention only on the grounds that his custody is in violation of the United States Constitution or the laws of the United States.  28 U.S.C. § 2254(a).  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies to § 2254 habeas corpus petitions filed after 1996.  28 U.S.C. § 2254(d); see Lindh v. Murphy, 521 U.S. 320, 336 (1997).  Under AEDPA, the Court may only grant a habeas petition when the underlying state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

To determine what constitutes "clearly established federal law" under 28 U.S.C.

---

[1] In his Traverse, Petitioner abandons his claims for violations of his due process rights based on prosecutorial misconduct; based on his conviction for aiding and abetting a first degree murder; based on the improper exclusion of a theory of the defense; and based on ineffective assistance of counsel.  (Doc. No. 19 at 2.)  The Government addressed these arguments on the merits in its Answer.  (Doc. No. 11 at 7-17.)  The Court has reviewed the Government's arguments regarding these claims and would have denied the claims if Petitioner had not abandoned them.

§ 2254(d)(1), courts look to Supreme Court holdings existing at the time of the state court decision.  See Lockyear v. Andrade, 538 U.S. 63, 71-72 (2003).  A state court's decision may be found to be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) if the state court confronts a set of facts "materially indistinguishable" from a decision of the Court, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lockyear, 538 U.S. at 72-75.  A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases, but unreasonably applies it to the facts of a particular state prisoner's case," or if a state court incorrectly extends the established rule to a new context, or refuses to extend it to a new context where it should apply.  Williams, 529 U.S. at 407; Lockyear, 538 U.S. at 76.  To be an unreasonable application of federal law, the state court decision must be more than incorrect or erroneous; it must be objectively unreasonable.[2] Id. at 75.

Federal courts apply AEDPA standards to "the last reasoned decision" by a state court addressing the merits of the claim.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  The last reasoned decision by the state court addressing these issues is the California Court of Appeal's February 5, 2009 unpublished opinion in People v. Vasquez, D050954.  (Lodgment No. 6.)

---

[2]  AEDPA has two provisions to guide federal courts reviewing state factual determinations.  First, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determinates that the state court was not merely wrong, but actually unreasonable."  Taylor v. Maddox, 366 F.3d 992, 999 (2004).  Second, "'a determination of a factual issue made by a State court shall be presumed to be correct,' and [] this presumption of correctness may be rebutted only by 'clear and convincing evidence.'"  Id. at 999 (citing 28 U.S.C. § 2254(e)(1)).  For example, a state court unreasonably determines a fact when it (1) fails to make a factual finding when it should have, (2) makes a factual finding under the wrong legal standard, (3) makes a factual finding when the fact-finding process is defective, (4) misstates the record in making a factual finding, and (5) makes a finding of fact when it has before it, yet apparently ignores, evidence supporting a contrary outcome.  Id. at 1000-01.

1    The district court may accept, reject, or modify the findings and
2    recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  If neither party
3    objects to the findings and recommendations of the magistrate judge, the district court
4    is not required to make a de novo determination.  See id.

5    **II.    Analysis**

6        **A.    Sufficiency of the Evidence**

7        Petitioner challenges the sufficiency of the evidence to support his conviction of
8    first degree murder.  (Doc. No. 1 at 10, 16.)  Specifically, Petitioner alleges there was
9    insufficient evidence to establish that he was the driver of the getaway jeep.  (Id. at 10.)
10   Petitioner also argues that the admission of witness Griselda P.'s testimony at trial, as
11   identification evidence, violated Petitioner's due process right to a fair trial.[3]  (Doc. No.
12   1 at 11.)  Lastly, Petitioner argues that the evidence as a whole was insufficient.  (Id. at
13   10-11.)

14       A constitutional due process challenge to the sufficiency of the evidence to
15   support a conviction is evaluated under the clearly established law from Jackson v.
16   Virginia, 443 U.S. 307, 318-19 (1979).  A habeas petitioner challenging a state criminal
17   conviction based upon sufficiency of the evidence is only entitled to relief "if it is found
18   that upon the evidence adduced at the trial no rational trier of fact could have found
19   proof of guilt beyond a reasonable doubt."  Id. at 324.  Whether any rational trier of fact
20   could have found the essential elements of the crime charged beyond a reasonable doubt
21   is viewed in the light most favorable to the prosecution.  Id. at 318-19.  Even if the
22   record contains facts that support conflicting inferences, a reviewing court must
23   presume that the trier of fact resolved any conflicts in favor of the prosecution, and

24

---

25       [3] Petitioner claims a violation under Manson v. Brathwaite, 432 U.S. 98 (1977).
26   Manson addressed the question whether the Due Process Clause "compels the
     exclusion, in a state criminal trial, apart from any consideration of reliability, of pretrial
     identification evidence obtained by a police procedure that was both suggestive and
27   unnecessary."  Id. at 99.  Because the police never conducted a lineup or any
     identification procedure with Griselda P., Manson does not apply to the present case.
28

defer to that determination. Id. at 326.  Additionally, after AEDPA, federal habeas courts apply the standard "with an additional layer of deference to the state court result." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

In determining that sufficient evidence supported Petitioner's conviction, the California Court of Appeal used a state law standard identical to the Jackson standard. (Lodgment No. 6 at 10 (applying People v. Holt, 15 Cal. 4th 619, 667 (1997).)  The state court's decision was not an unreasonable application of the standard to the facts of this case.  The prosecution presented sufficient evidence from which a rational trier of fact could conclude that Petitioner was the driver of the getaway jeep and is guilty of first degree murder.  Based on the record, the California Court of Appeals affirmed Petitioner's judgment, finding that "[t]he evidence was clearly sufficient." (Lodgment No. 6 at 10-13.)  The Court agrees.

The record includes testimony connecting Petitioner to the shooting.  The Santillano testimony identified Petitioner as the heavy-set Hispanic whom she saw all the time with WCC gang members. (Lodgment No. 1, RT vol. 2 at 244-427.)  Petitioner was one of only two Hispanic males known to associate with the WCC gang. (Lodgment No. 1, RT vol. 6 at 1107-08.)  After the shooting, a boy overheard Petitioner (known as "Dolla" ) and another gang member bragging that they had "just done a shooting" and had "blasted" some Blood in the head.  (Lodgment No. 1, RT vol. 2 at 302; Lodgment No. 1, RT vol. 5 at 983-84.)  The boy's brother was a WCC gang member.  (Lodgment No. 1, RT vol. 1 at 114.)  Petitioner was five-feet, seven-inches tall and weighed 250 pounds.  (Lodgment No. 6 at 12.)

The record also includes evidence connecting Petitioner to the getaway jeep and to a retaliatory motive for the shooting.  The latest shooting incident Santillano witnessed involving WCC gang members occurred on the day of the Robinson murder and preceded that victim's killing by only a few hours.  (Lodgment No. 1, RT vol. 2 at 256-85.)  Santillano witnessed a drive-by incident which a reasonable jury could

conclude prompted the retaliatory action by the WCC gang.  (See id.)  Santillano saw an SUV drive down Clay Street, followed by a white car, and heard someone yell, "West Coast!" which caused the group across the street to become agitated and excited. (Id. at 278-79, 356.)  Santillano saw Petitioner making shooting motions with his arm and fingers at the time others were firing at the passing vehicles.  (Id. at 284-86.)  She saw two black men from the group jump into a red Jeep, one of whom was carrying a shotgun he had been using to shoot at the cars.  (Id. at 288-92.)  She saw Petitioner and another black man run to the Jeep and get in, with Petitioner entering on the driver's side, and then saw the Jeep head towards the scene of the crime.  (Id.)

Other witnesses testified to circumstantial evidence connecting an individual that matched Petitioner's description to the shooting.  Witness Griselda P. testified to seeing the driver of a Jeep in an alleyway outside her house and to hearing gunshots around the time of the murder.  (Lodgment No. 1, RT vol. 3 at 590, 602-19.)  Shortly before Griselda heard the shots, Robinson, the victim, was sitting in a car parked at 4056 Boston Avenue.  (Id. at 529-35.)

> On October 9, 2004, 10 year-old Griselda lived with her mother on Boston Avenue in . . . southeast San Diego.  At approximately 10:30 p.m., she was on the second-story balcony of her apartment.  Griselda saw a red Jeep drive into the alley, turn out its lights and stop at the end of the alley. Griselda noticed the driver of the Jeep had a bandana which covered his face from the nose down.  Notwithstanding the bandana, Griselda was able to identify the driver as Mexican.  She also saw that there was an African-American in the passenger seat.  Shortly after the Jeep stopped, Griselda heard gunshots and went back into her apartment.  From her apartment window, Griselda saw two men come from a dirt lot next to the apartment building and get into the Jeep, which drove away quickly with its lights out.

(Lodgment No. 6 at 4; see also Lodgment No. 1, RT vol. 3 at 601-19.)  Griselda also testified that the driver was fat, with a big stomach that hit the steering wheel and long black hair that was kind of curly.  (Lodgment No. 1, RT vol. 3 at 605-611.)

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find Petitioner guilty.  See Jackson, 443 U.S. at 318-19.  Therefore,

1  the Court of Appeal's decision was not contrary to or an unreasonable application of

2  clearly established Supreme Court law.

3      **B.    Gang Evidence**

4      Petitioner challenges the gang evidence admitted at his trial.  Petitioner urges

5  reversal of his conviction for error in admitting prejudicial gang-related evidence on

6  both state law and federal law grounds.[4]  Petitioner specifically challenges the

7  admission of testimony from law enforcement officers discussing his crimes and his

8  WCC associations.  (Doc. No. 20 at 19-20.)  A state trial court's evidentiary ruling

9  usually does not present a federal question.  See Estelle v. McGuire, 502 U.S. 62, 67-68

10  (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

11  determinations on state-law questions.  In conducting habeas review, a federal court is

12  limited to deciding whether a conviction violated the Constitution, laws, or treaties of

13  the United States.").  Therefore, the Court may not address the question of whether

14  there was a state law violation, but only whether the state court unreasonably applied

15  United States Supreme Court law.   See Jammal v. Van de Kamp, 926 F.2d 918, 919-20

16  (9th Cir. 1991); see also 28 U.S.C. § 2254(d).

17      Federal habeas relief is available for improperly admitted evidence only if that

18  error rendered the trial so fundamentally unfair as to violate due process.  Estelle, 502

19  U.S. at 68, 70; see also Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998).

20  Constitutional due process is violated if there are no permissible inferences that may be

21  drawn from the challenged evidence.   Jammal, 926 F.2d at 919-20.     "Evidence

22  introduced by the prosecution will often raise more than one inference, some

23  _____

24      [4]  In his Traverse and his Objections, Petitioner mistakenly argues that the trial
court's admission of the gang-related evidence is a § 2254(d)(2) unreasonable factual

25  determination. (Doc. No. 19 at 13-15; Doc No. 23 at 6-10.)  For habeas purposes,
whether the trial court's admission of evidence rises to the level of a due process

26  violation is a question of constitutional law, not a factual determination. Therefore, 28
U.S.C. § 2254(d)(2) does not apply.  See Taylor, 366 F.3d at 999 (explaining that §

27  2254(d)(2) applies to challenges to factual findings made by the state court).
Accordingly, the Court addresses Petitioner's claim regarding the admission of gang-

28  related evidence under § 2254(d)(1).

permissible, some not." Id. at 920.  "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

      The California Court of Appeals applied a standard identical to the federal standard.  On appeal, the California court found that "evidence of gang membership is admissible if it is logically relevant to a material issue and is more probative than prejudicial. People v. Avitia, 127 Cal. App. 4th 185, 192 (2005).  Evidence of gang affiliation is admissible when it is relevant to a material issue in the case. United States v. Easter, 66 F.3d 1018, 1021 (9th Cir. 1995) (citing United States v. Abel, 469 U.S. 45, 49 (1984) (finding gang evidence admissible to show bias)). The Court of Appeals concluded that, "most of the law enforcement officers' testimony was limited to descriptions of [Petitioner's] presence in the vicinity of Clay Street or in the company of members of the WCC," to show Petitioner's identity as the Hispanic male driver of the getaway Jeep and the motive for the killing. (Id. at 8.)  In addition, the gang evidence was admitted to establish that the WCC is a criminal street gang in order to prove the Penal Code § 186.22 gang enhancement. (Lodgment No. 4 at 7-8.)  The gang evidence was introduced to establish permissible inferences that were essential to the prosecution's theory. See Jammal, 926 F.2d at 919.  These inferences include that Petitioner was part of a criminal street gang, Petitioner's motive, and Petitioner's identity. See Abel, 469 U.S. at 49.  The California court did not unreasonably apply Supreme Court law.  Accordingly, Petitioner's due process claim fails.[5]

### D.    Equal Protection Claim

      Petitioner alleges that he was deprived of equal protection of the laws because appellate counsel for indigent defendants cannot raise "constitutional violations based on evidence outside of the trial record." (Doc. No. 1 at 15.)  He neither elaborates a

---

[5] Petitioner has not demonstrated grounds for an evidentiary hearing. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398, 1400 (2011).

factual basis for such a claim nor cites any United States Supreme Court authority to support it. "It is well-settled that 'conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'" Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (citing James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

In addition, Petitioner's allegations do not constitute a violation of the Equal Protection Clause. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). An equal protection violation may exist if "a plaintiff [can] show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003)(citation omitted). A claim may also exist if an individual has been "intentionally treated differently from others similarly situated and [] there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Petitioner alleges that he was discriminated against on the basis of his indigent status. (Doc. No. 1 at 15.) Indigent persons are not a protected class. Rodriguez v. Cook, 169 F.3d 1176, 1179 (9th Cir. 1999). Petitioner has also not alleged facts showing that he was treated differently from other defendants similarly situated. Accordingly, Petitioner's equal protection claim fails.

### E.     Denial of Certificate of Appealability

Under AEDPA, a state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability from the district court judge or a circuit judge. 28 U.S.C. § 2253(c)(1)(A). A court may issue a certificate of appealability only if the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484

1    (2000).  In the present case, the Court concludes that petitioner has not made such a

2    showing and therefore the Court denies Petitioner a certificate of appealability.

3                                            **CONCLUSION**

4           Petitioner has not established that the state court's determination "was contrary

5    to, or involved an unreasonable application of clearly established federal law, as

6    determined by the Supreme Court of the United States" or that it "was based on an

7    unreasonable determination of the facts in light of the evidence presented in the state

8    court proceeding."  See 28 U.S.C. § 2254(d).  Accordingly, the Court adopts the

9    magistrate judge's report and recommendation and denies the petition for habeas

10   corpus.  In addition, the Court denies Petitioner a certificate of appealability.

11          **IT IS SO ORDERED**.

12   DATED:  February 15, 2013

13                                        _____

14                                        MARILYN L. HUFF, District Judge

15                                        UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26

27

28